UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEEMA KOLOFF,<br><br>    Plaintiff,<br><br>    v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY,<br><br>    Defendant. | Case No.: 1:13-cv-02060 LJO JLT<br><br>FINDINGS AND RECOMMENDATIONS DISMISSING PLAINTIFF'S MOTION FOR ATTORNEY FEES AND COSTS<br><br>(Doc. 17)<br><br>FINDINGS AND RECOMMENDATIONS DISMISSING ACTION FOR LACK OF JURISDICTION |

Plaintiff Sheema Koloff seeks an award of attorney fees and costs from Defendant Metropolitan Life Insurance Company, Inc. ("MetLife").[1]  (Doc. 17.)  MetLife filed its opposition to the motion on June 27, 2014 (Doc. 21), to which Plaintiff filed a reply on July 7, 2014 (Doc. 26). The Court heard the oral arguments of the parties on July 11, 2014.  For the following reasons, the Court recommends Plaintiff's motion for attorney fees and costs be **DISMISSED** for lack of jurisdiction.  In addition, the Court recommends the matter be **DISMISSED** for lack of jurisdiction.

**I.     Factual and Procedural History**

On November 15, 2010, Plaintiff filed a complaint for the wrongful denial of benefits under the Employee Retirement Income Security Act of 1974 in Kern County Superior Court.  Case No. 1:11-cv-

---

[1] The Court is critical of the failure of the parties to seek a judgment, to file a notice related to the mootness of the action or to file a motion related to the lack of jurisdiction no later than the time the merits of the matter had been indisputably resolved.  The Court has been directed to no authority that a motion for attorney's fees absent some other formal filing is the proper method to proceed and it holds here that such a motion is not the appropriate vehicle to establish that the merits have been resolved.

1

1  00195-AWI-JLT ("*Koloff I*") (Doc. 1)[2]. The matter was removed to this Court on February 3, 2011 by
2  MetLife. (*Id.*) On May 2, 2011, Plaintiff's current counsel sought to substitute into this case and the
3  request was granted the next day. (*Koloff I*, Docs. 15, 16)
4        On June 16, 2011, Plaintiff filed a first amended complaint and alleged that MetLife's denial of
5  her claim "for long term disability benefits on the grounds that she had a pre-existing condition" was
6  "an abuse of discretion." (*Koloff I*, Doc. 17.) According to Plaintiff, MetLife had "engaged in
7  procedural violations of its statutory obligations under ERISA, including, but not limited to, failing to
8  identify the medical staff that reviewed her file and failing to provide a complete copy of all
9  documents, records, and other information relevant to her claim." (*Id.* at 5.) The defendants filed an
10 answer on June 30, 2011, asserting: "MetLife conducted an appropriate and thorough investigation
11 regarding Koloff's claim for [long-term disability] benefits." (*Koloff I*, Doc. 19 at 5.)
12       The parties filed a joint scheduling report on July 27, 2011, which noted that "Plaintiff never
13 pursued an administrative appeal of th[e] adverse claim decision." (*Koloff I*, Doc. 21 at 2.) On January
14 5, 2012, the Court conducted a settlement conference with the parties, at which time the issue of
15 Plaintiff's failure to complete an administrative appeal was raised. (*Koloff I*, Doc. 35 at 1.) Following
16 briefing by the parties on the issue of exhaustion, the Court determined Plaintiff failed to exhaust her
17 administrative remedies by filing an appeal after the denial of her benefits. (*Koloff I*, Doc. 52 at 4-6.)
18 The Court expressly found the action should *not* be remanded[3] and recognized the Ninth Circuit
19 authority which held that "'the proper remedy is dismissal without prejudice' when an individual has
20 not exhausted all available administrative remedies prior to filing suit." (*Id.* at 8, quoting *Wyatt v.*
21 *Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003)). Further, the Court expressly found "no grounds to
22 award attorney fees to Plaintiff" because she had not demonstrated any success in the action. (*Id.*, n.4)
23
24
25 [2] The Court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993). The accuracy of court records cannot reasonably be questioned, and judicial notice may be taken. *Mullis v.*
26 *United States Bank. Ct.*, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987); *Valerio v. Boise Cascade Corp.,* 80 F.R.D. 626, 635 n. 1 (N.D.Cal.1978), *aff'd*, 645 F.2d 699 (9th Cir. 1981); *see also Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir.
27 1989); *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th. Cir. 1980). Therefore, judicial notice is taken of pleadings and Court orders issued in *Koloff v. Metropolitan Life Ins. Co.*, Case No. 1:11-cv-00195-AWI-JLT.
28 [3] Indeed, the Court expressed no comment on whether an appeal should be pursued or whether MetLife should consider the appeal at that late date.

As required by *Wyatt*, *Koloff I* was dismissed without prejudice on February 22, 2012. Plaintiff did not appeal.

According to Plaintiff, after the Court dismissed the action, she "appealed MetLife's denial of her claim for long-term disability benefits" with a letter dated June 1, 2012. (Doc. 2 at 8, ¶ 22.) Plaintiff alleges "MetLife acknowledged the appeal" on July 19, 2012, and "[i]mmediately thereafter, in a letter dated July 20, 2012, MetLife reversed its wrongful denial decision." (*Id.* at 9, ¶¶ 23-24.) Further, MetLife notified Plaintiff that the company would "consider her total disability status for the first time and requested additional information regarding Plaintiff's disability." (*Id.*, ¶ 25.) Plaintiff asserts that from October 12, 2012 to September 6, 2013, she submitted additional information to MetLife regarding her disability status, including physicians' medical reports. (*Id.* at 9-10, ¶¶ 26-29.) On September 6, 2013, "Plaintiff informed MetLife that she expected a response to her letter within the forty-five day statutory period required to respond to a claimant's appeal under Code of Federal Regulations section 2560.503-1(i)." (*Id.* at 10, ¶ 30.)

On December 17, 2013, Plaintiff initiated the action now pending before the Court ("*Koloff II*"), and asserted that she had exhausted her administrative remedies. (Doc. 2 at 11, ¶¶ 32-33.) Plaintiff alleged that "MetLife ha[d] yet to reach a decision on Plaintiff's claim and ha[d] not requested an extension of time to make a decision." (*Id.*) Plaintiff alleged a controversy "exist[ed] between the parties as to whether Plaintiff is disabled as defined in the Plan." (*Id.* at 15, ¶ 43.) MetLife was served with the Summons on December 19, 2013. (Doc. 5.) "MetLife sent a letter to Plaintiff . . . informing her that her claim for [long term disability] benefits had been approved" on December 20, 2013. (Doc. 10 at 5.)

In the Joint Scheduling Report filed by the parties on April 2, 2014, MetLife informed the Court that it "agreed to resume [Plaintiff's] monthly benefits payments on December 11, 2013." (Doc. 10 at 7.) Plaintiff reported that MetLife had been paying Plaintiff her disability claims, and that she received the relief requested in the complaint. (*Id.* at 5.) However, the parties did not request the entry of judgment and failed to take any formalized action toward the resolution of the merits of the action.

On June 13, 2014, Plaintiff filed the motion now pending before the Court. (Doc. 17.) In this motion, Plaintiff contends that fees incurred since May 2, 2011 should be awarded based upon the

3

assertion that Plaintiff achieved some success on the merits in *Koloff I* by because the Court dismissed that matter without prejudice and asserted, in essence, that the Court had remanded the matter for purposes of permitting Plaintiff to pursue an administrative appeal.  Id.  She contends also that the fees connected with the administrative appeal should be awarded as well as the fees incurred since this action was filed.  Id.  Thus, Plaintiff here seeks an award of attorney fees and costs in the amount of $155,654.00.  Id. at 23.

## II.      Evidentiary Objections

Plaintiff objects to the Court's consideration of the administrative record lodged by MetLife in support of its opposition to the motion.  (Doc. 26-3 at 2.)   She argues that the administrative record "lacks foundation and is inadmissible hearsay."  (*Id.*)  Plaintiff does not identify specific documents within the administrative record to which she objects, but rather attacks the entirety of the record submitted by MetLife.

ERISA cases ordinarily are decided solely on the basis of the administrative record that was before the plan administrator at the time its decision was made. *See Kearney v. Standard Ins.* Co., 175 F.3d 1084 (9th Cir. 1999) (en banc) ("If a court reviews the administrator's decision, whether de novo . . . or for abuse of discretion, the record that was before the administrator furnishes the primary basis for review").  Under the Federal Rules of Evidence, documents may be authenticated under Rule 901(b)(4) "'by review of their contents if they appear to be sufficiently genuine.'" *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011) (quoting Fed. R. Evid. 901(b)(4)).  For example, the Ninth Circuit noted that "district courts have authenticated letters 'by the linkage between the dates of postmarks and defendant's location on the days [the] letters [were] mailed" and a diary "by reviewing its contents"). *See id* (citing *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002)).

Here, the Administrative Record provided by MetLife appears sufficiently genuine.  The action log contains dates that correspond to dates that are identified by Plaintiff's counsel for work completed or dates that documents were submitted to MetLife.  Further, MetLife submitted the declaration of Cindy Broadwater who asserted that she was familiar with MetLife's "procedures for processing and administering claims . . . including specifically Plaintiff Sheema Koloff's . . . claim at issue."  (Doc. 20-2 at 2.)  Ms. Broadwater reported under penalty of perjury that the documents being lodged

constituted "a true, correct … copy of the administrative record pertaining to Plaintiff's claim at issue . . . that has been maintained by MetLife in the ordinary course of its business." (*Id.*)

To the extent that Plaintiff objects to the admissibility of the Administrative Records on the grounds of hearsay, she fails to identify any specific portions of the record. In addition, hearsay objections are not well-founded[4] in an ERISA action where the Court "review[s] the entire administrative record, including hearsay evidence relied upon by the administrator." *Black v. Long Term Disability Ins.*, 582 F.3d 738, 746 n. 3 (7th Cir. 2009)). Though the Court is not being asked directly to make a merits determination in this motion, to some degree, that is exactly what is being asked. Plaintiff has placed squarely at issue the assertion that her litigation *caused* MetLife to grant her benefits. Thus, review of the record must occur to evaluate the propriety of this position.

Moreover, to determine Plaintiff's entitlement to an award of attorney's fees, the Court will consider the *Hummel*[5] factors which require review of the administrator's actions despite the hearsay nature of the administrative record.[6] In apparent recognition of this fact, a great deal of Mr. McKennon's declaration filed in support of the motion for fees relies upon the administrative record or hearsay statements made during that process. (Doc. 17-1 at 10-13)

Moreover, the Ninth Circuit has determined the rules of evidence are not strictly applied in ERISA actions, and evidence may be considered "so long as it is relevant, probative, and bears a satisfactory indicia of reliability." *Tremain v. Bell Indus.*, 196 F.3d 970, 978 (9th Cir. 1999) (citing *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 943 n.2 (9th Cir. 1995)); *see also Black v. Long Term Disability Ins.*, 582 F.3d 738, 746 n. 3 (7th Cir. 2009) (explaining the Federal Rules of Evidence do not apply to an ERISA administrator's benefits determination").

---

[4] Notably, in at least one instance, the court found the administrative record to fall within the business records exception to hearsay without need for a declaration making this showing. *Adair v. El Pueblo Boys' & Girls' Ranch, Inc.*, 2008 WL 792031 at *9 (D. Colo. Mar. 20, 2008).

[5] As discussed more fully below, the five factors established in *Hummel v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir 1980) that must be evaluated related to a fee request, requires consideration of the administrative record.

[6] In *Bigley v. Ciber, Inc.*, 2012 WL 5494660 at *6 (D. Colo. Nov. 13, 2012), the Court held, "Likewise, plaintiff's position that the administrative record cannot contain inadmissible hearsay reflects counsel's continuing failure to understand the procedure in an ERISA case. The administrative record is what it is. If it contains hearsay that would be inadmissible in a court of law under the Federal Rules of Evidence, so be it. The rules of evidence do not apply to what the plan or third party administrator may consider in evaluating a long term disability claim. If they rely on unreliable evidence, then that could and should be considered by the reviewing court in making a determination as to whether to affirm or reverse the decision of the administrators. However, the Court does not exclude evidence that is part of the record considered below, nor certainly would the record be restricted to those documents to which plaintiff consents."

Here, review of the record reveals that the evidence is relevant and probative, and contains a more than satisfactory indicia of its reliability.

Finally, the Court notes that peppered through Plaintiff's reply brief are citations to the administrative record. (Doc. 26) Consequently, Plaintiff's objections to the Administrative Record are **OVERRULED**.

## III. Jurisdiction

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). The Ninth Circuit explained, "[T]he Constitution mandates that prior to our exercise of jurisdiction there exist a constitutional 'case or controversy,' that the issues presented are 'definite and concrete, not hypothetical or abstract.'" *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (quoting *Ry. Mail Assoc. v. Corsi*, 326 U.S. 88, 93 (1945)). To satisfy the "case or controversy" requirement, a plaintiff must establish standing to sue. *Human Life of Wash., Inc. v. Brumsickle*, 624 F.3d 990, 1000 (9th Cir. 2010); *see also Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 938 (2007) ("standing is an essential and unchanging part of the case-or-controversy requirement of Article III"). To establish standing—and thus that there is an actual case or controversy—a plaintiff "must demonstrate (1) an injury-in-fact, (2) causation, and (3) a likelihood that the injury will be redressed by a decision in the plaintiff's favor." *Human Life,* 624 F.3d 1000 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

To establish an injury-in-fact under the Employee Retirement Income Security Act ("ERISA"), a plaintiff must either "show an individualized harm" or "allege some injury in the form of a deprivation of a right as a result of a breach of fiduciary duty conferred by ERISA." *Kendall v. Employees Ret. Plan of Avon Prods.*, 561 F.3d 112, 120 (2nd Cir. 2009). Here, Plaintiff alleged in her complaint that "[a] controversy now exists between the parties as to whether Plaintiff is disabled as defined in the Plan," and that she was "seek[ing] a declaration of this Court that she meets the Plan definition of disability and thus entitled to benefits from the Plan." (Doc. 2 at 15, ¶43.) If true, this would have been sufficient to demonstrate an injury-in-fact under ERISA, and thus establish the Court has jurisdiction over the matter.

6

However, the time sheets for Plaintiff's counsel, Robert McKennon, indicate that Mr. McKennon spoke with a claims representative named Tonya Gill on December 5, 2013, after which he contacted Plaintiff and "conducted legal research [regarding] circumstances under which courts have allowed attorney's fees in similar circumstances." (Doc. 17-2 at 4.) On December 6, 2013, Mr. McKennon received "offset documents" from Plaintiff, and exchanged emails with her regarding the offsets. (*Id.*) Mr. McKennon's records indicate that he had another conversation with Plaintiff and with Ms. Gill on December 10, 2013 regarding Plaintiff's offsets. (*Id.*) That Mr. McKennon sought "offset"[7] information from Plaintiff after speaking with the claims administrator on December 5, 2013 strongly suggests that he knew of MetLife's intention to approve the claim prior to the filing of the complaint on December 17, 2013. This is corroborated by the actions taken by MetLife representatives, as reported in the Administrative Record.

Specifically, Ms. Gill noted she talked with Mr. McKennon on December 5, 2013, and "advised him that [MetLife] [was] working on getting a check out" to Plaintiff. (Doc. 33-2 at 61.) In addition, Ms. Gill noted that she informed Mr. McKennon that she needed "to verify SSDI amount and EDD amount that [Plaintiff] was receiving," and Mr. McKennon informed her that he would call back with the information. (*Id.*) Ms. Gill noted that on December 11, 2013, Mr. McKennon left a voice message with the specific information requested.[8] (Doc. 33-2 at 78.) Ms. Gill indicated Plaintiff's "LTD Claim [was] Approved" on December 11, 2013. (*Id.*) An approval letter was submitted to a Claim Support Specialist on December 11, 2013. (*Id.* at 85.) The approval letter was then submitted to a Unit Manager on December 18, 2013 at 11:07 a.m.[9] (*Id.* at 92.) On December 20, 2013, the letter approving Plaintiff's long term disability was mailed to Plaintiff. (*Id.*) This letter detailed the amount of benefits

---

[7] An "offset" is a sum that is deducted from an amount that is due and payable. Counsel's use of the word "offset" in his billing records demonstrates his understanding that benefits *would* be paid by MetLife.

[8] Though counsel denies that any "conversation" occurred on December 11, 2013 between Mr. McKennon and the MetLife claims person, he does not deny he left the information related to the SSDI and EDD amounts on a voice mail message for a MetLife claims person. The Court notes that these figures were reflected on the December 20, 2012 letter formally granting benefits.

Likewise, counsel does not explain why he believed the need for the SSDI and EDD amounts were described as "offsets" in his billing records if he did not believe the sought-after information was unrelated to a grant of benefits. Notably, he also fails to explain his e-mail and telephone conversations with Plaintiff on December 6, 2012 and December 10, 2013 regarding "offset documents" she provided and "re offsets." (Doc. 17-2 at 4.)

[9] MetLife was served with the Summons and Complaint in this action on December 18, 2013 at 12:00 p.m. (Doc. 5.)

7

that were due after deducting the amounts she received for SSDI and EDD.  (*Id.* at 93-94.)

Based upon the facts presented by both parties, the Court finds MetLife made the decision to approve Plaintiff's long term disability benefits by December 5, 2013 and, more importantly, made clear to Plaintiff's counsel that the only thing yet to do was to determine the net amount to be paid which would occur once counsel provided MetLife the SSDI and EDD figures.  There is no other plausible explanation for the request that Mr. McKennon provide the amounts of these benefits or his repeated discussions with Plaintiff regarding these offsets.

On the other hand, the Court notes the day MetLife informed counsel that it would be issuing a check and inquired about offset information, December 5, 2013, and on the days preceding and following, counsel spent nearly 13 hours—at a cost of nearly $4,000—researching "attorney's fees on remand," "whether attorney's fees can be recovered after dismissal with prejudice which is equivalent to a remand," "re circumstances under which courts have allowed attorney's fees in similar circumstances" and "re attorney's fees after dismissal." (Doc. 17-2 at 4.)  In January 2014 counsel spent 25.70 hours—at a cost of nearly $10,000—researching and drafting a motion for attorney's fees.  (*Id.*) The efforts focused on "Research and draft memo re whether attorney's fees can be collected on remand," "Further research re attorney's fees on remand," "review legal research re attorney's fees for Administrative proceedings after remand," "attorney's fees on remand," "re attorney's fees on remand," "outline attorney's fees motion and legal research re cases dealing with attorney's fees paid to firms during Administrative period after remand," "attorney's fees on remand," "attorney's fees in similar but unique circumstances and for hourly rates," "attorney's fees after dismissal without prejudice and draft motion for attorneys' fees," and "attorney's fees after dismissal without prejudice." (*Id.*)  Research into awards of attorney's fees continued in the months following in which nearly 60 hours were spent related to attorney's fees and drafting the motion for fees at a cost of more than $20,000.  (*Id*. at 4-6.) Indeed, a bulk of the billings from immediately before the filing of this action to now relate to the anticipated motion for attorney's fees.  In light of this, it is apparent that Plaintiff's counsel had no intention of allowing this matter to resolve at the administrative level and, once informed that benefits would be paid, rushed the filing and service of the complaint solely to preserve the anticipated motion for attorney's fees.  Because there was no dispute as to the merits of the action before the complaint

was filed, Plaintiff has not shown any "injury in fact." Consequently, the Court finds that at the time the case was filed, there was no case or controversy between the parties.

Significantly, a court that lacks jurisdiction at the outset of a case lacks the authority to award attorneys' fees. *Branson v. Nott*, 62 F.3d 287, 292-93 (9th Cir. 1995); *Smith v. Brady*, 972 F.2d 1095, 1097 (9th Cir. 1992); *Latch v. United States*, 842 F.2d 1031, 1033-34 (9th Cir. 1988). For this reason, the Court recommends Plaintiff's motion for attorney fees be **DISMISSED** for lack of jurisdiction. *See Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 837 n.2 (9th Cir. 2007) (explaining that "the appropriate disposition of a motion for attorneys' fees when the court lacked jurisdiction from the outset of an action is not denial of the motion . . . but dismissal of the motion for lack of jurisdiction"). Likewise, the Court recommends the case be **DISMISSED** for lack of jurisdiction.

## IV.     Award of Fees and Costs under ERISA

Alternatively, even assuming the Court had jurisdiction at the inception of the case[10], the Court recommends the motion be denied because Plaintiff has failed to demonstrate her entitlement to this relief. Pursuant to ERISA, the District Court "in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1); *see also Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 452 (9th Cir. 1980) (explaining fees are discretionary, not mandatory, in an ERISA action). In general, "the prevailing party on an ERISA claim is entitled to attorney's fees, 'unless special circumstances would render such an award unjust.'" *United Steelworkers of Am. v. Ret. Income Plan for Hourly-Rated Employees of Asarco, Inc.*, 512 F.3d 555, 564 (9th Cir. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)). Usually, a "prevailing party" is one who achieves a judicially-sanctioned, material change in the legal relationship of the parties. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604-05 (2001); *see also Tex. State Teachers Assoc. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-92 (1989) (a plaintiff prevails if he "has succeeded on any significant issue in litigation which achieved some of the benefit [he] sought in bringing suit").

---

[10] If the Court had jurisdiction at the inception of the case and the underlying issue was resolved *after* the filing of the complaint, "the district court retains equitable jurisdiction" over attorney fees because attorney fees are "an ancillary matter" and "jurisdiction outlasts the case or controversy." *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1329 (9th Cir. 1999).

However, a party need not "prevail" in an ERISA action to be awarded attorney's fees. The Supreme Court determined that fees and costs may be awarded to any party "who has achieved 'some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 245 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)). The Supreme Court explained: "A claimant does not satisfy that requirement by achieving 'trivial success on the merits' or a 'purely procedural victory,' but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a 'lengthy inquiry into the question whether a particular party's success was 'substantial' or occurred on a 'central issue.'" *Id.* (quoting *Ruckelshaus*, 463 U.S. at 688, n.9).

### A.   *Koloff I*

Plaintiff asserts that she is entitled to attorney fees and costs incurred in *Koloff I* "because the effect of the Court's decision to dismiss *Koloff I* without prejudice so she could file her appeal is analogous to, and had the practical effect of, a remand order in that it was a judicially sanctioned action that forced MetLife to change it position that [Plaintiff] could not appeal her denial and it provided [Plaintiff] with the opportunity to successfully appeal."[11] (Doc. 17 at 13.) However, Plaintiff's arguments are unavailing, and mischaracterize the events in *Koloff I*.

First, MetLife never asserted that Plaintiff could not appeal her denial even though late. To the contrary, MetLife asserted that Plaintiff could pursue an appeal at any time," and that she did "not need a court order to pursue a right that she already possesse[d]." (*Koloff I*, Doc. 49 at 13.) Although the Court dismissed the *Koloff I* without prejudice, this was the only proper action for the Court because Plaintiff failed to exhaust her administrative remedies. The Ninth Circuit instructs that when an individual fails to exhaust available administrative remedies, "the proper remedy is dismissal without prejudice." *Wyatt*, 315 F.3d at 1120. Plaintiff cannot now characterize the Court's compliance with the law of this Circuit as "success on the merits," particularly where the Court did *not* order a remand and

---

[11] Even assuming Plaintiff urged the Court to dismiss *Koloff I* without prejudice—which she did not—a dismissal without prejudice is a mere "procedural victory." *Barnes v. AT & T Pension Benefit Plan-Nonbargained Program*, 963 F. Supp. 2d 950, 961-62 (N.D. Cal. 2013). Only if the Court had found a basis to remand the matter, e.g., an error committed by MetLife claims personnel, would a procedural remedy—a remand—have been appropriate. No such finding was made in *Koloff I*. Importantly, a procedural remedy constitutes some success on the merits while a procedural victory does not.

stated that it was "hard-pressed to understand Plaintiff's position that she was successful in th[e] proceeding." *Koloff I*, Doc. 52 at 8, n.4.) Moreover, though Plaintiff argues the dismissal was "analogous to" a remand, it was not. The Court stated explicitly that it "refuse[d] to remand the matter for the administrative appeal." (*Id.*, emphasis added.) Had the Court remanded the action, MetLife would have been *required* to reconsider Plaintiff's disability status. However, the Court *never* indicated in any fashion that MetLife could or should consider an appeal, if one was finally filed after the dismissal of *Koloff I* and, indeed, based upon the clear terms of the plan, MetLife would have been justified in refusing to do so. Thus, though MetLife *permitted* Plaintiff to file an untimely appeal of the decision, its reasons for doing so were unrelated to the Court's order dismissing the action.

Significantly, the Court "found no grounds to award" attorneys' fees and costs to Plaintiff in *Koloff I*, and denied her request. (*Koloff I*, Doc. 52 at 8, n.4.) Plaintiff did not appeal this decision. Under the doctrine of collateral estoppel, Plaintiff is not permitted to now seek a new determination on this issue.[12]

### B.     Administrative Appeal and *Koloff II*

Plaintiff asserts that fees and costs should be awarded because "attorneys' fees are recoverable … where there is a remand order requiring the insurer to reconsider a claim and as a result the party seeking recovery of fees 'achieved material, judicially-sanctioned change in her relationship with the claims administrator.'" (Doc. 17 at 13) (quoting *Langston v. North American Asset Development Corp. Group Disability Plan*, 2010 U.S. Dist. LEXIS 12507, at *12 (N.D. Cal. Jan. 20, 2010). In addition, Plaintiff observes that "California courts have even held that 'a remand order without more (e.g., without an order instructing benefits to be awarded) is enough to constitute some success on the merits.'" (*Id.*) (quoting *Barnes v. AT&T Pension Benefit Plan - Nonbargained Program*, 2013 U.S. Dist. LEXIS 105132, at *21-25 (N.D. Cal. July 26, 2013)). Significantly, however, these cases deal

---

[12] A case must meet three requirements before a court may apply the doctrine of collateral estoppel to it: "(1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the must have been actually litigated [by the party against whom preclusion is asserted] in the prior litigation; and (3) the determination of the in the prior litigation must have been a critical and necessary part of the judgment in the earlier action." *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1096 (9th Cir. 2004). It is indisputable that a key issue in *Koloff I* was whether Plaintiff could receive attorneys' fees and costs for work done during *Koloff I*. The issue was squarely raised and briefed by the parties. In rejecting the request, the Court found expressly that Plaintiff had not demonstrated any success on the merits and explicitly denied the request for fees. This issue was necessary to a full determination of the issues and key to the judgment.

11

with a *remand* to the claims administrator. Because the Court in *Koloff I* refused to order a remand, these cases are not instructive.[13]

Plaintiff asserts that she "also received some success on the merits in the litigation under the 'catalyst theory.'" (Doc. 17 at 15.) Under the "catalyst theory," "for purposes of determining an award of attorneys' fees, a plaintiff prevails if he achieves the desired outcome of litigation even if it results from a voluntary change in the defendant's conduct." *Kenseth v. Dean Health Plan, Inc.*, 784 F. Supp. 2d 1081, 1094 (W.D. Wis. 2011) *vacated on other grounds*, 722 F.3d 869 (7th Cir. 2013). According to Plaintiff, she "achieved some success on the merits in litigation in this matter under the "catalyst theory" because: (1) the Court's decision to dismiss the FAC without prejudice was the catalyst for MetLife agreeing to allow Koloff to successfully appeal its initial denial decision, and (2) the filing of the present action was the catalyst for MetLife to ultimately approve Koloff's LTD benefits." (Doc. 17 at 15.)

Notably, the Ninth Circuit has not yet determined whether the catalyst theory is viable in an ERISA action in light of *Buckhannon*, 532 U.S. at 604-05.[14] In any event, as noted above, MetLife had decided to grant benefits and had determined the amount of the benefits before the complaint was filed. Likewise, MetLife had sent the formal approval letter for review before service of the complaint was accomplished. Thus, there is no evidence to suggest that this litigation was a catalyst to the decision to grant of the benefits.

On the other hand, MetLife argues that "Plaintiff is not entitled to attorneys' fees because she failed to achieve any degree of success on the merits." (Doc. 21 at 15, emphasis omitted.) MetLife contends, "fees are not recoverable under ERISA if the court does not first determine that the claim administrator abused its discretion or otherwise acted improperly." (*Id.* at 17) (citing *Hoffman v. American Society for Technion-Israel Institute of Technology*, 2014 U.S. Dist. LEXIS 85959 (S.D. Cal. June 17, 2014); *Binaley v. AT&T Umbrella Benefit Plan No. 1*, 2013 U.S. Dist. LEXIS 138931 (N.D.

---

[13] Alternatively, the Court would recommend fees incurred during the administrative appeal be denied because in light of the express refusal to remand *Koloff I*, in general, fees expended during administrative processes are not recoverable. *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 987-88 (9th Cir. 2001) ("Put simply, ERISA does not "allow[ ] for attorneys' fees for the administrative phase of the claims process.")

[14] Though *Flom v. Holly Corp.*, 276 F. App'x 615, 616 (9th Cir. 2008) seems to indicate that it is not.

Cal. Sept. 26, 2013). MetLife notes that in *Hoffman*, the court denied the plaintiff's request for fees although the plaintiff "ultimately received insurance policy benefits through the administrative process" because "the Court did not award those benefits nor did the Court favorably decide any legal issue relating to the Plaintiff's eligibility." (Doc. 21 at 18, quoting *Hoffman*, 2014 U.S. Dist. LEXIS 85959 at *10.) Similarly, in *Templin v. Independence Blue Cross*, 2011 U.S. Dist. LEXIS 98482 (E.D. Pa. Aug. 19, 2011), the court denied a fees claim where the court "never made a judicial ruling that [plaintiffs] were qualified to receive benefits under the Plan," or a "substantive determination of the adequacy of the process provided by defendants." *Id.* at *21.

Although not cited by either party, *Reimann v. Prudential Ins. Co. of Am.*, 2010 WL 4116743 (E.D. Wis. Oct.19, 2010) is factually similar to the matter now before the Court. The benefits of the plaintiff were terminated by Prudential, and she filed an administrative appeal. *Id.* at *1. However, Prudential failed to respond to the appeal within the permitted timeframe. *Id.* Reimann filed a complaint for violations of ERISA against Prudential in the district court on May 26, 2010. *Id.* Prudential "reinstated Reimann benefits by letter dated May 28, 2010." *Id.* The court determined that in light of these facts, Reimann had no "success on the merits," explaining:

> In the case at hand, the court cannot say that any success was trivial. Reimann in fact has had her benefits reinstated. Nor is there any "procedural victory" to speak of in this case. The decisive question is whether her success comes on the merits given Prudential's voluntary reinstatement before any further litigation ensued. The *Hardt* opinion illustrates that a district court need not make a ruling on the merits of a claimant's entitlement to reinstatement of benefits. However, the district court in *Hardt* did find the claimant did not receive the review to which she was entitled under ERISA, thereby justifying a remand. In contrast, this court was never even given the opportunity to make a finding that ERISA's procedure was violated. Though it seems very likely that Prudential violated ERISA procedure by failing to make its decision within the statutorily mandated time period, the court cannot say that Reimann achieved any success based on the actual merits in this case. No merits were ever reached.

*Id.* at *2. Further, the court rejected the argument that the suit was the "catalyst" for the reinstatement of benefits, finding the suit was not even "casually linked to the achievement of the relief obtained." *Id.* (quoting *Hooper v. Demco, Inc.*, 37 F.3d 287, 292 (7th Cir. 1994)). The court explained that "none of the facts appear to show that Prudential only made its decision because Reimman filed suit." *Id.* Accordingly, the court found the plaintiff failed to show an award of attorney fees was appropriate.

Similarly, here, the facts do not demonstrate that the suit was linked to the decision to approve

Plaintiff's benefits. Although MetLife failed to make a formal decision within the permitted timeframe, there is nothing to suggest that the lawsuit was the catalyst for MetLife's formal approval of benefits only three days after the lawsuit was filed. Indeed, as discussed above, Plaintiff's counsel was informed that benefits would be paid before the litigation was initiated. Coupled with the extensive amount of time spent researching whether fees could be recovered for *Koloff I* and the administrative hearing after receiving information that the benefits would be paid, the only true issue Plaintiff wished to resolve in this litigation was attorney's fees.

The Court declines to follow *Pomerleau v. Health Net of California, Inc.*, 2012 WL 5829850 (C.D. Cal. Nov. 15, 2012) because it is factually distinct. Initially, though paying for all of plaintiff's medical care, it refused to pay for neurological rehabilitation at Centre for Neuroskills—the only facility which could provide the services she needed—because it was an out-of-network provider. *Id*. at 2. However, during the administrative appeal, the insurance company agreed to pay for rehabilitation but only at one of two other facilities which it selected. *Id*. at 3. Only after the plaintiff filed her litigation did the insurer reverse itself and agree to pay for the treatment at CNS all of the doctors agreed was needed. *Id.* at 3. Here, as set forth above, the decision to pay the benefits, which was communicated to counsel, occurred before the lawsuit was ever filed.

In light of these facts, the Court finds Plaintiff has failed to demonstrate "some success on the merits" as required to receive fees and costs under ERISA.

**C.**     ***Hummell* Factors**

Assuming, arguendo, Plaintiff met her burden of showing some success on the merits, an award of attorney fees still would not be appropriate. Once a claimant demonstrates "some success on the merits," the Court considers the five factors articulated by the Ninth Circuit in *Hummell* to determine whether an award of fees and costs is appropriate. *See Hummell*, 634 F.2d at 453 (9th Cir. 1980); *see also Hardt*, 560 U.S. at 355, n.8 ("once a claimant has satisfied th[e] [some success] requirement, and thus becomes eligible for a fees award under § 1132(g)(1), a court may consider the five factors"). The factors include:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of

an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Hummell*, 634 F.2d at 453.

### 1. Bad faith

The Ninth Circuit explained that "[b]ad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Estate of Blas v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986). Here, there is no evidence that MetLife acted in bad faith. To the contrary, it appears MetLife acted in *good* faith by permitting Plaintiff to appeal its administrative decision even though it was filed years after the 180-day appeal period had expired.

### 2. Ability to pay

Plaintiff argues that MetLife "can certainly satisfy an award of attorneys' fees in this case. (Doc. 17 at 22.) In response, MetLife asserted that it "does not dispute that it is capable of satisfying an award of fees." (Doc. 21 at 27.) However, MetLife asserts that it "should not be responsible for Plaintiff's fees simply because it has the ability to pay." (*Id.*)

As Plaintiff observes, the Ninth Circuit has accorded great weigh to an administrator's ability to pay: stating: "Based on this factor alone, absent special circumstances, a prevailing ERISA employee plaintiff should ordinarily receive attorneys' fees from the defendant." (Doc. 17 at 22, quoting *Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir. 1983)). However, for the reasons set forth above, this is an exceptional case where fees should not be. Accordingly, this factor does not weigh in favor of an award of attorney fees.

### 3. Deterrence

Without a showing of bad faith, the Court should not seek to deter parties from accessing the courts to determine their legal rights. *See Simonia v. Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1122 (9th Cir. 2010) (upholding denial of a fee award against a plan, explaining: "given Hartford's good faith actions, we do not wish to deter others from acting in the same manner"). Here, an award of attorney fees may deter MetLife and others from showing good faith and allowing individuals to file appeals outside the time permitted, or when a court has determined a remand is not

appropriate because a claimant failed to exhaust administrative remedies.

Moreover, the denial of an award may deter others from filing a lawsuit solely to obtain attorney fees, as Plaintiff's counsel did here. In *Buckhannon Bd. & Care Home*, the Supreme Court explained that fees should not be awarded to a plaintiff who files "a nonfrivolous but nonetheless potentially meritless lawsuit ([that] will never be determined)." *Id.*, 532 U.S. at 606. Here, it cannot reasonably be disputed that Plaintiff's counsel was aware of MetLife's decision to approve her long term disability benefits prior to filing the lawsuit. Plaintiff "reached the 'sought-after destination' without obtaining any judicial relief." *See id.* Accordingly, this factor weighs against an award of attorney fees and costs.

### 4. Benefit to others

Plaintiff asserts that the result in this case "will serve the purpose of benefitting all the participants of the Plan, as well as beneficiaries of other ERISA plans administered by MetLife." (Doc. 17 at 23.) She argues, "MetLife may be more motivated to properly inform participants of their right to appeal and to reach claim decisions in a timely manner." (*Id.*, citing *Mardirossian v. Guardian Life Ins. Co. of Am.*, 457 F. Supp. 2d 1038, 1045 (C.D. Cal. 2006) ("[a]lthough [plaintiff] did not seek benefits on behalf of other plan participants or for the plan as a whole, his initiative in challenging the plan's decision will benefit participants whose claims might otherwise be denied").

On the other hand, MetLife argues that this factor weighs an against an award of fees because "[t]his case only involved Plaintiff's individual claim for disability insurance benefits" and "Plaintiff was undeniably seeking to benefit herself and herself alone in this litigation." (Doc. 17 at 23.) The Court agrees; there is no evidence to suggest that the decision by MetLife to approve Plaintiff's benefits will benefit others. Therefore, this factor weighs against an award of fees and costs.

### 5. Merits of the parties' positions

The final *Hummell* factor requires the Court to compare the relative merits of the parties' position in this lawsuit. However, MetLife notified Plaintiff's counsel prior to the initiation of this action that her long term disability benefits would be approved, and issued a formal notification of the approval only three days after the Complaint was filed. Consequently, the Court did not reach the merits of the case, and cannot find that this factor weighs in favor of an award to Plaintiff.

## V. Dismissal of the Action

Even assuming the Court had jurisdiction in this matter at the onset, the parties agree that MetLife has determined Plaintiff is entitled to payment of benefits under her policy and has paid, and continues to pay, those benefits. Thus, because there is no relief the Court may afford, the matter is moot and should be **DIMISSED WITH PREJUDICE**.

## VI. Findings and Recommendations

Based upon the foregoing, **IT IS HEREBY RECOMMENDED:**

1. Plaintiff's motion for attorneys' fees and costs (Doc. 17) be **DISMISSED** for lack of jurisdiction; and
2. Plaintiff's complaint be **DISMISSED** for lack of jurisdiction.

In the alternative, should the District Court find that the Court had jurisdiction over the action at the time Plaintiff was filed, the Court recommends Plaintiff's motion for attorney fees be **DENIED** because she did not achieve "some success on the merits" where the Court did not reach the merits of the case, and the lawsuit was not the catalyst for the approval of Plaintiff's.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within 14 days after being served with these Findings and Recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response thereto shall be filed within 7 days after service of the Objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **July 11, 2014**                    /s/ Jennifer L. Thurston
                                                                     UNITED STATES MAGISTRATE JUDGE